NO. 07-02-0449-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JUNE 10, 2003

_____


KATHY HOUSTON, APPELLANT

V.

NORTHWEST VILLAGE, LTD. AND MEDLOCK
SOUTHWEST MANAGEMENT CORPORATION, APPELLEES


_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 88,105-E; HONORABLE ABE LOPEZ, JUDGE

_____

Before JOHNSON, C.J. and REAVIS and CAMPBELL, JJ.


OPINION


Appellant Kathy Houston appeals the summary judgment granted by the trial court in favor of appellees Northwest Village, Ltd. and Medlock Southwest Management Corporation. We will reverse the summary judgment and remand the case to the trial court.

Appellees are the owners of Northwest Village Apartments in Amarillo. Houston's suit claims that she suffered personal injury when she slipped and fell on ice while delivering the Amarillo newspaper to residents of the apartments.[1] The summary judgment evidence shows that the apartments are contained in 10 buildings on the apartment premises. At about 6:30 on the morning of February 1, 1999, Houston drove her car onto the premises, then walked to deliver the papers to the doorways of individual apartments. The apartments did not have a newspaper vending machine. Snow had been on the ground for two days. On those two previous days, apartment maintenance personnel had cleared the snow off the apartment sidewalks and treated them with pellets of a chemical melting agent. They had not yet arrived for work at the time of Houston's injury, so the sidewalks had received no attention that morning.

Houston testified at her deposition that she normally did not walk on the sidewalks as she delivered the papers but was attracted to them that morning because they were cleared of snow. She noticed, though, that there was "shiny black ice" on the sidewalks. She fell, fracturing her ankle.

Appellees' resident apartment manager testified on deposition that she had not yet been outside her apartment at the time of Houston's fall, and was not aware of the condition of the sidewalks. She also testified that she saw no ice on the sidewalks when she went outside after being notified of the incident; that she gave instructions for the

_____

[1]In her petition, Houston alleged that appellees were negligent in failing to warn her of the unsafe condition; failing to remove the ice causing her to slip and fall; and failing to discover and remove the ice within a reasonable time.

melting agent to be applied to the sidewalks when maintenance personnel arrived; and that maintenance personnel later reported to her that they had encountered some frozen conditions on the premises.

Appellees filed a traditional motion for summary judgment, asserting that Houston was on the premises as a licensee, and that her suit therefore could not succeed because (1) appellees had no actual knowledge of the condition of the sidewalks at the time of Houston's injury, while (2) Houston did have actual knowledge of their icy condition. Houston's response argued that she was an invitee on the premises.

Appellees, as movants, have the burden of showing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Under the well-established standards for review of a summary judgment, we take evidence favorable to the non-movant as true, and we indulge every reasonable inference in favor of the non-movant. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985). Summary judgment for a defendant is proper if, as a matter of law, the plaintiff cannot prevail on the claims. *Butcher v. Scott*, 906 S.W.2d 14, 15 (Tex. 1995).

As framed by the parties, the sole issue on appeal is that of Houston's status on the premises as licensee or invitee. Appellees' motion for summary judgment was based on the proposition that Houston's status depends entirely on her relationship with appellees. The proposition is not correct.

3

Citing the test set forth in *Cowart v. Meeks*, 131 Tex. 36, 111 S.W.2d 1105 (1938), and focusing only on Houston's relationship with appellees, appellees argue that Houston's status on the premises was that of a licensee because she had no business or other relationship inuring to the benefit of appellees from which the invitation required for invitee status can be implied. *Cowart*, 131 Tex. at 40, 111 S.W.2d at 1107. Appellees emphasize Houston's testimony that she had no agreement with the apartment management concerning her delivery of papers, but had agreements only with individual tenants, and argue that Houston's deliveries provided no economic benefit to appellees.

Even assuming, *arguendo*, that appellees conclusively established that Houston's business of delivering newspapers to their tenants did not confer a sufficient benefit on appellees to imply that she enjoyed an invitation from appellees to enter the premises, that conclusion would not end our inquiry, because appellees' duty to Houston was not determined solely by the nature of her relationship with appellees.

In *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978), the social guest of an apartment tenant was injured when she fell on hallway stairs in the apartment building. The stairway was dark because apartment employees had failed to adjust the automatic lighting. The Texas Supreme Court held that, with respect to the condition of parts of the premises over which a landlord retains control, the duty owed by the landlord to an invitee of a tenant is determined under the standard stated in Sections 360 and 361 of the

4

Restatement (Second) of Torts.[2]  *Id.* at 514-15.  *See also Johnson County Sheriff's Posse,*

*Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996); *Cadenhead v. Hatcher*, 13. S.W.3d 861,

863 (Tex.App.--Ft. Worth 2000, no pet. h.).

*Parker* focuses not on the relationship between the landlord and the one entering

the premises, but on that person's relationship with the tenant.[3]  Here, indulging every

reasonable inference in Houston's favor, there is at the least sufficient summary judgment

evidence to raise an issue of fact regarding Houston's status on the premises.[4]  It is

---

[2]Section 361 states:

A possessor of land who leases a part thereof and retains in his own control any other part which is necessary to the safe use of the leased part, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care (a) could have discovered the condition and the risk involved, and (b) could have made the condition safe.

[3]Note this statement from comment c to Section 360 of the Restatement, which is quoted in full in *Parker*: "The privilege of the visitor is not based, as is that of the lessor's own invitee or licensee, upon the consent given upon the occasion of the particular visit, but upon the fact that he is entitled to enter by the right of the lessee, who is entitled under his lease to use the part of the land within the control of the lessor not only for himself, but also for the purpose of receiving any persons whom he chooses to admit." *Parker*, 565 S.W.2d at 515.

[4]Although the *Parker* opinion says that the Court then limited its holding to invitees of tenants, Sections 360 and 361 of the Restatement would impose liability to a broader category of persons, including "others lawfully upon the land with the consent of the lessee or a sublessee." *See also Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex. 1993) (discussion to effect that duties to tenant owed by landlord who retains control of portion of premises are owed also to employee of tenant); *Cadenhead*, 13 S.W.3d at 863 (duty of landlord to tenant with respect to condition of portion of premises still under landlord's control owed also to "those who are on the premises with the tenant's consent"); Comment c to Restatement Section 360 (quoted in *Parker*, 565 S.W.2d at 515) ("a lessor may be liable to an invitee or even to a licensee of the lessee"). Because we find summary judgment evidence sufficient to raise an issue that Houston was the invitee of appellees'

5

undisputed that Houston was present on the Northwest Village Apartments premises at the time of her fall for the purpose of carrying out her business arrangement with residents to deliver newspapers to their apartments.[5] Her presence on the premises enabled residents to receive the newspapers for which they had contracted, and thus was of sufficient direct benefit to the resident-customers to imply those residents' invitation of her onto the premises for that purpose.[6] *Cowart*, 131 Tex. at 40, 111 S.W.2d at 1107.

Too, the summary judgment evidence establishes that appellees owned and managed the apartments. They exercised control over the maintenance of some areas of the apartment complex, including the sidewalks, through their resident manager. Apartment maintenance personnel were responsible for clearing the sidewalks of snow, and the apartment resident manager directed and supervised them in that task.

---

tenants who were her customers, we need not consider here the nature of the duty appellees might owe to persons occupying a lesser status.

[5]There is a factual dispute as to whether Houston delivered a paper to the resident apartment manager. The manager's deposition was taken in October 2001; she testified that she did not then take the newspaper. Houston testified, though, that the manager (at her apartment, not the manager's office) was among her customers at the time of her injury, and the summary judgment evidence contains a computer record of an Amarillo newspaper subscription then in effect in the manager's name at that address. Although it is not necessary to our decision, for purposes of review of a summary judgment, we resolve the disputed issue of the resident manager's subscription to the newspaper in Houston's favor. For purposes of this appeal, then, we consider that Houston's customers at the time of her injury included appellees' manager.

[6]The Restatement uses the term "business visitor," a person invited to enter the land for a purpose directly or indirectly connected with business dealings with the possessor of the land (or, in this case, with the possessor's tenants). *See* Restatement (Second) of Torts § 332 (1965); *Prestwood v. Taylor*, 728 S.W.2d 455, 458-59 (Tex.App.–Austin 1987, writ ref'd n.r.e.).

6

We turn, then, to the specific grounds asserted by appellees in their motion for summary judgment. Appellees first pointed to the evidence, which Houston did not dispute, that appellees had no actual knowledge of the icy condition of the sidewalks prior to Houston's fall. Recall that the apartment maintenance personnel had not yet arrived for work, and that the resident manager had not yet been outside her apartment, at the time of Houston's fall. But a landlord's duties to the invitees of its tenants include the duty to exercise reasonable care to discover unreasonably dangerous conditions on those parts of the premises over which the landlord retains control. *Cadenhead*, 13 S.W.3d at 863; *see Motel 6 G.P., Inc. v. Lopez,* 929 S.W.2d 1, 3 (Tex. 1996). Appellees' lack of actual knowledge of the condition of the sidewalks, then, does not support summary judgment in their favor.

Secondly, and similarly, appellees' motion for summary judgment pointed to the evidence that Houston had actual knowledge of the icy conditions as a bar to her recovery. Houston testified that she saw "shiny black ice" on the sidewalks before her fall. She also testified that the sidewalks had not been cleared of snow when she delivered papers the two previous mornings at about the same time, leading to a conclusion that she was aware the maintenance personnel would not yet have worked on the sidewalks at that time of day. The point might be well taken if we agreed with appellees that, as a matter of law, they owed Houston only the duties owed a licensee, *see Wal-Mart Stores, Inc. v. Miller*, 46 Tex. Sup. Ct. J. 530, 2003 Tex. LEXIS 31 (March 27, 2003) (per curiam), but because we do not, her actual knowledge of the dangerous conditions does not necessarily prohibit her recovery against appellees. *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992); *Parker*, 565 S.W.2d at 516.

7

Appellees thus having failed to establish their entitlement to judgment as a matter of law, we reverse the summary judgment and remand the case to the trial court.


James T. Campbell
Justice